## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

VALERIE MAHTANI, CARLOS
MUNOZ, and MICHELLE MUNOZ,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

        v.

WYETH and ANIMAL HEALTH
INTERNATIONAL, INC.,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

**CIVIL ACTION NO.  08-cv-6255
(KSH)**

DOCUMENT ELECTRONICALLY
FILED

---

## MEMORANDUM OF LAW IN SUPPORT OF
## WYETH AND ANIMAL HEALTH INTERNATIONAL, INC.'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR
## FAILURE TO STATE CLAIMS UPON WHICH
## RELIEF MAY BE GRANTED

REED SMITH, LLP
George E. McDavid
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey  08540

Attorneys for Defendants
Wyeth and Animal Health
International, Inc.

Motion Date:  March 16, 2009

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

FACTUAL BACKGROUND ..................................................................... 4

STANDARD OF REVIEW ........................................................................ 4

    I.    Plaintiffs' Non-Product Liability Act Claims Must Be
          Dismissed ................................................................................ 6

          A.    Consumer Fraud Act Claims Are Subsumed by the
                 Product Liability Act ..................................................... 8

          B.    Implied Warranty And Unjust Enrichment Claims
                 Are Subsumed By The Product Liability Act ................ 11

    II.    Alternatively, Plaintiffs Failed To Allege That Defendant
          AHI Knew Of Or Participated In Any Alleged Fraud ............. 13

    III.    Plaintiffs' Complaint Fails to State An Express Warranty
          That They Claim Was Breached ............................................. 15

    IV.    Count II Of Plaintiffs' Complaint Should Be Dismissed ........ 17

CONCLUSION........................................................................................... 18

TABLE OF AUTHORITIES

CASES

Bailey v. Wyeth, Inc., No. MID-L-0999-06 MT, dated July 11, 2008 .. 10, 11

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ................................... 5

Brown ex. rel. Estate of Brown v. Philip Morris, Inc., 228 F.Supp.2d
    506 (D.N.J. 2002) .............................................................. 7, 13

Commonwealth of Pa. v. PepsiCo, Inc., 836 F.2d 173 (3d Cir. 1988)........... 6

Conley v. Gibson, 355 U.S. 41 (1957) ............................................................ 4

Hinojo v. New Jersey Manufacturers Insurance Co., 353 N.J.Super.
    261 (App. Div. 2002), certif. denied. 175 N.J. 76 (2002) ...................... 12

Humphrey v. Viacom, Inc., 2007 WL 1797648 (D.N.J. June 20, 2007)........ 5

In re Lead Paint Litigation, 191 N.J. 405 (2007).................................... 7, 8, 9

Knipe v. SmithKline Beecham, 583 F.Supp.2d 602 (E.D. Pa 2008) ........... 16

McDarby v. Merck & Co, Inc., 401 N.J.Super. 10 (App. Div. 2008)
    ........................................................................................ 8, 9, 10, 11

Naporano Iron & Metal Co. v. Am .Crane Co., 79 F.Supp.2d 494
    (D.N.J. 2000) ......................................................................... 14

New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J.Super.
    8 (App. Div. 2003), certif. denied 178 N.J. 249 (2003) ......................... 13

Potwara ex rel. Gray v. Grip, 319 N.J.Super. 386 (App. Div. 1999),
    certif. denied, 161 N.J. 51 (1999)............................................... 12

Repola v. Morbark Indus., Inc., 934 F.2d 483 (3d Cir. 1991).................. 2, 12

Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615 (2007) ................................. 2

Shackil v. Lederle Laboratories, Division of America Cyanamid Co.,
    116 N.J. 155 (1989) ................................................................. 2

Sinclair v. Merck & Co., Inc., 195 N.J. 51 (2008) ................. 1, 2, 7, 8, 10, 11

Tirrell v. Navistar International, Inc., 248 N.J.Super. 390 (App. Div. 1991), certif. denied, 126 N.J. 390 (1991).....................................2, 11, 12

Walus v. Pfizer, Inc., 812 F.Supp. 41 (D.N.J. 1993)....................................13

## RULES

Fed. R. Civ. Pro. 9 .................................................................................18
Fed. R. Civ. Pro. 9(b)..............................................................................14

## STATUTES

N.J.S.A. 2A:58C-1 ..........................................................................1, 6, 12

N.J.S.A. 2A:58C-1(b)(2).............................................................................1

N.J.S.A. 2A:58C-2 ....................................................................................3

N.J.S.A. 12A:2 ........................................................................................16

N.J.S.A. 65:8-1 .........................................................................................8

Defendants Wyeth ("Wyeth") and Animal Health International, Inc. ("AHI") respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Complaint filed against them by Plaintiffs Valerie Mahtani, Carlos Munoz and Michelle Munoz ("Plaintiffs").

## **INTRODUCTION**

Pursuant to governing New Jersey statute and controlling New Jersey Supreme Court authority, Defendants request that Plaintiffs' claims be dismissed for failure to state a claim upon which relief may be granted.

In this action seeking damages for harm caused to Plaintiffs by their use of Defendants' pet medication, ProMeris, a product used to treat and prevent flea and other parasite infestations, Plaintiffs here failed to plead the only cause of action available to them to redress their complaint that Defendants' product caused them harm. The New Jersey Product Liability Act ("PLA"), N.J.S.A. 2A:58C-1 to -11, provides the only avenue available to Plaintiffs. It applies to "any claim . . . for harm caused by a product, irrespective of the theory underlying the claim, except actions caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3). It further defines "harm" as "physical damage to property, other than to the product itself. . . ." N.J.S.A. 2A:58C-1(b)(2). The PLA is "paramount when the underlying claim is for harm caused by a product." <u>Sinclair v. Merck & Co., Inc.</u>,

195 N.J. 51, 66 (2008).  In Sinclair, the New Jersey Supreme Court made clear that

plaintiffs may not maintain non-PLA causes of action where "the heart of

plaintiffs' case is the . . . harm caused by [a] drug."  Id.  Indeed, the PLA was

enacted in 1987 to "re-balance the law in favor of manufacturers."  Rowe v.

Hoffman-La Roche, Inc., 189 N.J. 615, 623 (2007) (citations and internal

quotations omitted).  Accordingly, as noted by the New Jersey Supreme Court, the

PLA reflects the Legislature's "intent to limit the expansion of products-liability

law by creating absolute defenses and rebuttable presumptions of non-liability."

Shackil v. Lederle Lab., Div. of Am. Cyanamid Co., 116 N.J. 155, 187 (1989).

Additionally, the Third Circuit Court of Appeals has held that the PLA is "the sole

basis for relief under New Jersey law available to consumers injured by a defective

product" and has interpreted it as subsuming common law claims.  Repola v.

Morbark Indus., Inc., 934 F.2d 483, 492 (3d Cir. 1991).  Thus, the PLA

"established the *sole method* to prosecute a product liability action."  Tirrell v.

Navistar Int'l, Inc., 248 N.J. Super. 390, 398 (App. Div. 1991), certif. denied, 126

N.J. 390 (1991) (emphasis added).

The essence of Plaintiffs' claims is that Defendants failed to provide an

adequate warning of the risks associated with the active ingredient in ProMeris and

that, as a result of the alleged failure to warn, Plaintiffs were injured.  The

Complaint repeatedly describes Plaintiffs' legal theories as involving whether

Defendants "omitted and/or failed to disclose" information to Plaintiffs. See, e.g., Compl. at ¶ 39(c)-(i). This language tracks the PLA's failure to warn standard: A manufacturer or seller may be liable if "the product causing the harm . . . failed to contain adequate warnings or instructions. . . ." N.J.S.A. 2A:58C-2. Thus, Plaintiffs have filed a classic products liability claim governed by the PLA. Nonetheless, Plaintiffs here assert violation of consumer protection laws, unjust enrichment, and breach of express and implied warranties. In that New Jersey law clearly holds that the PLA is the sole remedy for product liability claims, Plaintiffs' non-PLA claims must be dismissed. Alternatively, the Court should dismiss any fraud-based claims against Defendant AHI because the Complaint fails to set forth any factual allegations that AHI knew of or participated in any deceptive practices. Moreover, Plaintiffs' breach of express warranty claim also fails as a matter of law because Plaintiffs have not identified a valid express warranty. Finally, Count II of Plaintiffs' Complaint, which consists of a mere listing of the consumer protection statutes of forty-one other states, should be dismissed as inconsistent with Plaintiffs' contention that New Jersey law should be applied to all claims. Accordingly, Plaintiffs' Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

Plaintiffs initiated this action by filing a putative class action complaint in this Court on December 19, 2008.  In the Complaint, Plaintiffs seek economic damages for harm allegedly suffered by their pet dogs as a result of their use of ProMeris, a flea and tick medication.  Plaintiffs allege that ProMeris was distributed by AHI and manufactured by Wyeth.

ProMeris is a topical, liquid treatment that is applied to animals, primarily by pet owners. Compl. at ¶ 15.  It is approved by the United States Environmental Protection Agency for use once a month on cats and dogs age 8 weeks and older. Id. at ¶¶ 15, 22.  ProMeris is available only through a veterinarian and cannot be obtained by the general consumer at a retail store.  Id. at ¶14.  Plaintiffs allege that the use of ProMeris can lead to various side effects, including vomiting, lethargy, skin irritation and, in some cases, death.  Id. at 24.

## STANDARD OF REVIEW

The United States Supreme Court recently revised the long-standing motion to dismiss standard originally expressed in Conley v. Gibson, 355 U.S. 41 (1957). In revising the standard, the Court found that a Complaint must contain more than "labels and conclusions," but rather that the factual allegations "must be enough to

raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In articulating this new standard, the Court held that "Rule 8(a)(2) ... requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. at n.3.  The Court instructed that "'the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. at 555 (quoting 5 Wright & Miller, Federal Practice and Procedure §1216, at 235-236 (3d ed. 2004)).  Moreover, "Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" Id. (quoting 5 Wright & Miller, Federal Practice and Procedure §1202, pp. 94, 95 (3d ed. 2004)).

While a Court must accept Plaintiffs' allegations as true for purposes of a Motion to Dismiss brought pursuant to Rule 12(b)(6), the Court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" Humphrey v. Viacom, Inc., 2007 WL 1797648, *3 (D.N.J. June 20, 2007) (quoting Morris v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Rather, "the plaintiff must allege

- 5 -

sufficient facts in the complaint to survive a Rule 12(b)(6) motion.  Confronted

with such a motion, the court must review the allegations of fact contained in the

complaint; for this purpose, the court does not consider conclusory recitations of

law."  Id. at *4 (quoting Commonwealth of Pa. v. PepsiCo, Inc., 836 F.2d 173, 179

(3d Cir. 1988)).  "A plaintiff who fails to allege basic facts in support of his claims

should not be allowed to proceed."  Id. (citing DM Research v. Coll. of Am.

Pathologists, 170 F.3d 53, 55-56 (1st Cir. 1999)).

## I.     Plaintiffs' Non-Product Liability Act Claims Must Be Dismissed.

Plaintiffs bring this Complaint seeking compensation and other relief for

harm caused by their use of Defendants' product.  They assert their claim for relief

through causes of action for Breach of Express Warranty (Count V), Breach of

Implied Warranty (Count IV), Unjust Enrichment (Count III), and a claim under

the New Jersey Consumer Fraud Act (Count I).  However, the New Jersey Product

Liability Act was promulgated to provide the mechanism for precisely that which

is sought here—relief for harm caused by a product—and thus governs this action.

By its express provision, the Act subsumes all of these claims except the breach of

express warranty claim.  N.J.S.A. 2A:58C-1(b)(3) (defining "product liability

action" as "any claim or action brought by a claimant for harm caused by a

product, irrespective of the theory underlying the claim, except actions for harm

caused by breach of an express warranty").

In Sinclair, the New Jersey Supreme Court recently examined whether non-PLA claims are available where the claims result from harm caused by product. It held that "the PLA is the sole source of remedy for plaintiffs' defective product claim." 195 N.J. at 54. In doing so, it rejected the plaintiffs' claims under the New Jersey Consumer Fraud Act  The court's decision is consistent with and flows from a long line of cases interpreting the PLA, which has held that "the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." In re Lead Paint Litig., 191 N.J. 405, 436-437 (2007). The New Jersey Supreme Court has emphasized that "[w]ith the passage of the Products Liability Act, . . . there came to be *one unified, statutorily defined theory of recovery for harm caused by a product* . . . ." Id. at 435 (quoting Dreier *et al.*, New Jersey Products Liability & Toxic Torts Law § 1:2-1 (2007)) (emphasis added). See, e.g., Brown ex. rel. Estate of Brown v. Philip Morris, Inc., 228 F. Supp. 2d 506, 516 (D.N.J. 2002) (noting that "the Third Circuit, the New Jersey District Court, and the New Jersey State courts consistently have dismissed product liability claims based on common-law theories when those theories allege 'harm caused by a product'").

Accordingly, for the reasons explained below, the Court should dismiss each of Plaintiffs' non-PLA claims.

## A.  Consumer Fraud Act Claims Are Subsumed by the Product Liability Act

It is now well established that a plaintiff claiming harm from a product may not maintain a separate action under the Consumer Fraud Act ("CFA"), N.J.S.A. 65:8-1 to -106.  In Sinclair, the New Jersey Supreme Court stated, "[D]espite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product. . .  Consequently, plaintiffs may not maintain a CFA claim."  See 195 N.J. at 66; see also In re Lead Paint, 191 N.J. at 437; McDarby v. Merck & Co, Inc., 401 N.J. Super. 10, 98 (App. Div. 2008) ("[W]e find no basis, in legislative history, statutory language or Court decisions, to conclude that plaintiffs can maintain separate causes of action under the PLA and the CFA in this case."), certif. granted on other grounds, No. 62,856 (N.J. Oct. 8, 2008).

In In re Lead Paint, twenty-six municipalities and counties sought to recover from lead paint manufacturers and distributors, *inter alia*, the costs of providing medical care to its residents affected with lead poisoning.  191 N.J. at 408-09.  On defendant's petition, the court was asked to consider whether the plaintiffs could maintain a claim based on the common law tort of public nuisance.  Id. at 410.  In reaching its conclusion that the plaintiffs ***could not*** state a claim for public nuisance, the court was persuaded by the "inescapable fact that carefully read, the claims asserted would instead be cognizable only as products liability claims."  Id.

at 436.  The court then turned to the language of the PLA and concluded that it

"encompass[es] virtually all possible causes of action relating to harms caused by

consumer and other products."  Id. at 436 (citing N.J.S.A. 2A:58C-1b(3)).  Thus,

the court held that the PLA was the plaintiffs' exclusive remedy.  Id.

In McDarby, the Appellate Division had occasion to consider whether the

plaintiffs in a pharmaceutical case could maintain a separate action under the CFA

and concluded that they could not.  401 N.J. Super. at 98.  There, the plaintiffs

claimed physical injury due to their use of the defendants' prescription drug,

Vioxx.  Id. at 50.  Relying on the New Jersey Supreme Court's decision in In re

Lead Paint, the McDarby court concluded that the plaintiffs' CFA claims were

subsumed by the PLA.

> As in Lead Paint plaintiffs' own arguments make it clear
> that what they are asserting is, at its core, that Merck
> failed to warn of dangers from a product of which it had
> knowledge, resulting in alleged economic harm to them.
> Further, the economic "harm" upon which their claims
> are based, consisting of a loss "deriving from" personal
> physical illness, injury or death, pain and suffering,
> mental anguish or emotional harm, and loss of
> consortium is, as in Lead Paint, encompassed within the
> definition of harm set forth in the PLA.

Id. at 97; see also id. at 98-99.  Accordingly, the court reversed the jury's verdict

based on violations of the CFA claim and vacated the award of attorney's fees.  Id.

at 98.

Less than one week after the Appellate Division's ruling in McDarby, the New Jersey Supreme Court confirmed that CFA claims are subsumed by the PLA. See Sinclair, 195 N.J. at 65-66.  In an action alleging that the plaintiffs were at an increased risk of harm due to their use of Vioxx, the court found that the "heart of plaintiffs' case is the potential for harm caused by Merck's drug.  It is obviously a product liability claim." Id. at 66.  Accordingly, the court held that "plaintiffs may not maintain a CFA claim." Id.

Applying these decisions to the Hormone Therapy Litigation,[1] the Honorable Jamie D. Happas granted summary judgment in the manufacturers' favor and dismissed plaintiffs' claims under the CFA, as well as their common law causes of action for fraud and misrepresentation.  See Opinion, Bailey v. Wyeth, Inc., No. MID-L-0999-06 MT, dated July 11, 2008, at 48-57, attached as Exhibit A.  In concluding that the plaintiffs' CFA claim is subsumed by the PLA, Judge Happas found that "[t]o allow plaintiffs to seek damages for loss of their co-payments as a result of purchasing defendants' drugs under a theory of consumer fraud will 'create a cause of action entirely inconsistent with the PLA's

---

[1]     The plaintiffs in the Hormone Therapy Litigation asserted claims against the defendants for harm allegedly caused by their use of the defendants' hormone therapy medications.  There were nearly 200 cases filed in New Jersey.  These cases were centralized for case management and transferred to Middlesex County.

comprehensive legislative scheme.'" Id. at 53 (quoting Lead Paint, 191 N.J. at 439).

Similarly, here, Plaintiffs are asserting a product liability claim—that they (through their pets) were harmed by the use of Defendants' veterinary medicine, ProMeris. Despite their claim that Wyeth engaged in unfair trade practices and failed to warn of possible risks, like the claims of the plaintiffs in McDarby, Sinclair and Bailey, their claim is one for alleged harm due to use of a product. Thus, this is a product liability claim that is within the scope of the PLA, and the CFA claim must be dismissed.

## B.    Implied Warranty And Unjust Enrichment Claims Are Subsumed By The Product Liability Act

In addition to the CFA claim, Plaintiffs have also asserted claims based on breach of implied warranty and unjust enrichment. Courts apply the same rationale in evaluating common law claims as is applied to CFA claims and conclude that these claims are also subsumed by the PLA.

Plaintiffs have only one route by which to proceed and they have eschewed it. The PLA "established the *sole method to prosecute a products liability action*." Tirrell, 248 N.J. Super. at 398 (emphasis added). In Tirrell, as here, the claim was that a defective product caused the plaintiff's injuries. The court was faced with deciding whether negligence and warranty claims survive the enactment of the PLA or still exist as independent causes of action. Writing for the court, Judge

Dreier explained why these claims are subsumed by the PLA: "Since a products liability action encompasses '*any* claim or action brought by a claimant for harm caused by a product,' N.J.S.A. 2A:58C-1, . . . it is clear that common-law actions for negligence or breach of warranties (except express warranties) are subsumed within the new statutory cause of action . . . ." Id. The court squarely rejected the notion that a negligence action involving a product exists post-enactment of the PLA: "only a single products liability action remains." Id. at 399. The court concluded that New Jersey "no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for 'harm' (as defined in the Act) caused by a defective product." Id. at 398. See also Hinojo v. New Jersey Mfrs. Ins. Co., 353 N.J. Super. 261, 270 n.2 (App. Div. 2002), certif. denied, 175 N.J. 76 (2002); Potwara ex rel. Gray v. Grip, 319 N.J. Super. 386, 400-01 (App. Div. 1999), certif. denied, 161 N.J. 51 (1999).

Similarly, the Third Circuit Court of Appeals has held that the PLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." Repola v. Morbark Indus., Inc., 934 F.2d 483, 492 (3d Cir. 1991) (holding that permitting non-PLA claims "would contravene the [PLA's] intent to provide a single statutory products liability claim"). The Repola court agreed with Judge Dreier's interpretation in Tirrell and held that the PLA is "the sole basis for relief under New Jersey law available to consumers injured by a defective

product." Id. See Brown, 228 F. Supp. 2d at 515-17 (holding that the PLA subsumes plaintiff's causes of action for strict liability, negligence, fraudulent concealment, fraudulent misrepresentation and conspiracy); Walus v. Pfizer, Inc., 812 F. Supp. 41, 43, 45 (D.N.J. 1993) (holding that the PLA subsumes plaintiff's common law fraud claims because "New Jersey treats all products liability actions the same, regardless of the theory asserted").

As New Jersey courts have uniformly held that the PLA does not permit separate causes of action for harms allegedly caused by a product, the Court should dismiss the breach of implied warranty and unjust enrichment claims.

## II.    Alternatively, Plaintiffs Failed To Allege That Defendant AHI Knew Of Or Participated In Any Alleged Fraud.

Even if the Court should find that Plaintiffs' CFA claims may proceed, Plaintiffs have failed to allege any act or omission by AHI that would constitute "unlawful conduct" under the CFA. Accordingly, Plaintiffs' CFA claim against AHI should be dismissed.

To state a claim under the CFA, a plaintiff must allege:  (1) "unlawful conduct" by the defendants; (2) an "ascertainable loss" suffered by the plaintiff; and (3) a "causal relationship" between the unlawful conduct and the ascertainable loss. New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 13 (App. Div. 2003), certif. denied 178 N.J. 249 (2003) (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 24 (1994)).

It is well established that claims brought under the CFA are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b). <u>Naporano Iron & Metal Co. v. Am .Crane Co.</u>, 79 F. Supp. 2d 494, 510 (D.N.J. 2000). The purpose of Rule 9(b) is to "provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputation by safeguarding them against spurious allegations of immoral and fraudulent conduct." <u>Id.</u> at 511 (citing <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1418 (3d Cir. 1997)). Thus, the complaint must set forth "precise allegations of date, time or place," or "must use some means of 'injecting precision and some measure of substantiation into their allegations of fraud." <u>Id.</u> (citing <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984)).

Further, a "plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud." <u>Id.</u> "[C]ollectivized allegations against 'defendants' do not suffice." <u>Id.</u> (citing <u>Eli Lilly & Co. v. Roussel Corp.</u>, 23 F. Supp. 2d 460, 491 (D.N.J. 1998)).

Plaintiffs' Complaint contains no factual allegations concerning AHI's involvement in the alleged deceptive practices. Rather, the complaint avers the following:

> Defendants intended that Plaintiffs and the members of
> the Class rely on their materially deceptive practices and

> purchase Defendants' products as a consequence of the deceptive practices, including Defendants' misrepresentations and omissions of material fact with respect to their products as set forth herein.

Compl. at ¶ 49. Assuming *arguendo* that Plaintiffs have sufficiently pled that

either defendant engaged in any deceptive practices,[2] the Complaint is utterly

devoid of any factual allegations concerning AHI's conduct. Accordingly,

Plaintiffs' CFA claim against Defendant AHI must be dismissed.

**III. Plaintiffs' Complaint Fails to State An Express Warranty That They Claim Was Breached.**

Under New Jersey law, an express warranty can be created by any of the

following:

(a)    Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b)    Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

---

[2]    For instance, the Complaint states that Wyeth issued a letter to physicians in May 2008 that allegedly contained statements that were contrary to its experience with adverse event reports. Wyeth does not concede this factual allegation nor that this allegation is sufficient to constitute "unlawful conduct" for purposes of the CFA. Nonetheless, for purposes of this motion, and bearing in mind that all allegations must be read in the light most favorable to plaintiffs, Wyeth does not move to dismiss for failure to state "unlawful conduct" under the CFA and reserves its right to so move in the future.

> (c)   Any sample or model which is made part of the basis of
> the bargain creates an express warranty that the whole of
> the goods shall conform to the sample or model.

N.J.S.A. 12A:2-313. "[A]n express warranty is created when a seller makes a

promise to a buyer related to a good or promises that a good will conform to a

specific description." Knipe v. SmithKline Beecham, 583 F. Supp. 2d 602, 625

(E.D. Pa. 2008) (citing Elias v. Ungar's Food Prods., Inc., 252 F.R.D. 233 (D.N.J.

June 30, 2008)). "Further, a representation is presumed to be part of the basis of

the bargain 'once the buyer has become aware of the affirmation of fact or

promise.'" Id. (citing Elias, 252 F.R.D. at 250 (quotations omitted)).

Plaintiffs allege that the following language, found in the "Limited Warranty

and Disclaimer" section of the package insert, implicitly warranted the product:

> Directions for the use of this product are based upon tests
> believed to be reliable.  The use of this product being
> beyond control of the seller, no guarantee, express or
> implied, is made as to the effects of such use or the
> results to be obtained if not used in accordance with
> printed directions and established safe practice.  To the
> extent consistent with applicable law, buyer's exclusive
> remedy and seller's exclusive liability for any and all
> claims, losses, damages or injuries resulting from the use
> or handling of this product, whether or not based in
> contract, negligence, strict liability in tort or otherwise
> shall be limited, at the seller's option, to replacement of,
> or the repayment of the purchase price for, the quantity of
> product with respect to which damages are claimed.

See Compl. at ¶ 108; ProMeris Package Insert, attached as Exhibit B.  According to Plaintiffs, "Implicit in Wyeth's warranty is the guarantee that when used in accordance with printed directions, ProMeris is safe."  Compl. at ¶ 109.

This language simply does not create an express warranty.  It makes no promises or assurances that the product will conform to a particular description, it does not warrant that the goods are safe for all dogs, and it does not represent that ProMeris will always be effective at treating and preventing infestations of fleas and ticks.  A reasonable consumer reading this language would interpret it as it was intended—that the manufacturer does not offer a guarantee of the safety of the product and the manufacturer's liability is limited to the price of the goods that were used.  Further, the Complaint contains no allegations that Plaintiffs ever read or saw this language; thus, there is no averment that the alleged express warranty became a part of the basis of the bargain.  Accordingly, Plaintiffs' breach of express warranty claim must be dismissed for failure to state a claim upon which relief may be granted.

## IV.    Count II Of Plaintiffs' Complaint Should Be Dismissed.

Count II of Plaintiffs' Complaint asserts violations of forty-one states' consumer protection statutes.  In that Plaintiffs assert that "New Jersey's Substantive Law Applies to the Proposed Nationwide Class," Compl. at ¶¶ 30-35, and that "common questions of law and fact predominate over any individual

- 17 -

questions," id. at ¶ 40, all claims based on laws of other states should be dismissed. Further, given the requirement that allegations of fraud be pled with particularity, see Fed. R. Civ. Pro. 9(b), mere citation to other states' consumer protection laws does not meet this requirement, nor does it afford Defendants the opportunity to defend themselves against such vague claims.

## CONCLUSION

For all of the foregoing reasons, Wyeth and AHI respectfully request the dismissal of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

**REED SMITH LLP**
Attorneys for Defendants Wyeth
and Animal Health International, Inc.

By: */s/ George E. McDavid*
George E. McDavid, Esq.

Dated:  February 18, 2009