**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
(973) 624-7070 (fax)

ATTORNEYS FOR DEFENDANT
WYETH

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VALERIE MAHTANI, CARLOS MUNOZ, AND MICHELLE MUNOZ, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WYETH and ANIMAL HEALTH INTERNATIONAL, INC. <br><br> Defendants. | CIVIL NO.  08-CV 6255-KSH-PS <br><br><br><br> **DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT ON NAMED PLAINTIFFS' CLAIMS AND ALL CLASS-WIDE CLAIMS** |

Linda S. Woolf
K. Nichole Nesbitt
Derek M. Stikeleather
**GOODELL, DeVRIES,
  LEECH & DANN, LLP**
One South Street, 20th Floor
Baltimore, MD  21202
(410) 783-4000
(410) 783-4040 (fax)

Gita Rothschild
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
(973) 624-7070 (fax)

**COUNSEL FOR DEFENDANTS**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

I. Plaintiffs Waived Their Product Liability Claims and Any
   Allegations That ProMeris Is Not Safe ..................................................... 2

   A. The Record Shows Plaintiffs Waived Their Safety Claims ......... 2

   B. Plaintiffs' Inapt Public Policy Arguments Do Not Create a
      Genuine Dispute of Material Fact ................................................ 4

   C. The "Law of the Case" Doctrine Is Not at Issue in This
      Motion ........................................................................................... 5

II. Plaintiffs Cannot Continue Without an Efficacy Expert ......................... 5

   A. Establishing a Veterinary Pesticide's Efficacy Is a Complex
      Scientific Question That Requires Expert Testimony as a
      Matter of Law ............................................................................... 5

   B. Dr. Plunkett Cannot Offer Testimony on ProMeris's
      Efficacy ......................................................................................... 7

III. Plaintiffs Cannot Show an Ascertainable Loss or Any Other
    Recoverable Damages ............................................................................... 8

   A. Not All Named Plaintiffs Are Even ProMeris Purchasers ........... 8

   B. Plaintiffs Cannot Show Any Benefit-of-the-Bargain Losses ....... 9

   C. NJCFA Standing Is Not at Issue in This Motion ....................... 11

CONCLUSION .................................................................................................. 12

## **TABLE OF AUTHORITIES**

Bushman v. Halm, 798 F.2d 651 (3d Cir. 1986) .................................................. 6

In re Ford Motor Co. E-350 Van Products Liability Litigation (No. II),
Civil Action No. 03-4558(GEB), 2010 WL 2813788
(D.N.J. July 9, 2010) ...................................................................................... 10

McDarby v. Merck & Co., 949 A.2d 223 (N.J. Super. Ct. App.
Div. 2008) ......................................................................................................... 3

Parker v. Howmedica Osteonics Corp., Civil Action No. 07-02400(JLL),
2008 WL 141628 (D.N.J. Jan. 14, 2008) ......................................................... 10

Shannon v. Howmedica Osteonics Corp., Civil Action No. 09-4171(JLL),
2010 WL 421096 (D.N.J. Feb. 1, 2010) .......................................................... 10

Shelton v. Restaurant.com Inc., Civil Action No. 10-0824(JAP), 2010 WL
2384923 (D.N.J. June 15, 2010) ...................................................................... 10

Smajlaj v. Campbell Soup Co., CIV. 10-1332 JBS/AMD, 2011 WL
1086764 (D.N.J. Mar. 23, 2011) ............................................................... 9, 10

## INTRODUCTION

Defendants are entitled to summary judgment on all claims for three independent – and still unrebutted – reasons: Plaintiffs (1) have irrevocably abandoned their claims that ProMeris is not safe, (2) have no expert to testify that ProMeris lacks efficacy, and (3) have no recoverable damages. Nothing in Plaintiffs' 43-page brief creates a genuine dispute of material fact on any of these three points. Instead, Plaintiffs try to defeat summary judgment through repetition and angry rhetoric. In the first 27 pages of their opposition brief, Plaintiffs avoid any meaningful analysis of the three pillars of Defendants' motion. From there, Plaintiffs argue that:

- ➢ They are not "advancing 'clearly inconsistent' arguments," despite the fact that Defendants' motion quotes eight separate unrebutted statements from the December 15, 2009 hearing transcript that prove the contrary (Pls.' Opp. at 31);

- ➢ veterinary pesticide efficacy (or safety) claims do not require expert testimony (Id. at 34-39); and

- ➢ a consumer's ultimate purchase of a competitor's product that she had originally intended to purchase – before she was allegedly "induced to purchase" Defendants' product – somehow constitutes an "ascertainable loss" under the NJCFA (Id. at 41-42).

1

Each of these arguments is legally incorrect and provides no basis for denying summary judgment. Plaintiffs must have an efficacy expert; Plaintiffs' ultimate purchase of a competitor's pesticide is not an "ascertainable loss" under New Jersey law; and the record shows that Plaintiffs – regardless of how they try to spin it – have advocated clearly inconsistent legal positions (and disavowed all product safety claims) to thwart application of the New Jersey Product Liability Act in 2009. Unable to muster a genuine dispute of material fact on these case-dispositive points, Plaintiffs cannot drum up an alternative "genuine dispute" by repeatedly calling Defendants liars and then asking them to agree or face trial.

### I. Plaintiffs Waived Their Product Liability Claims and Any Allegations That ProMeris Is Not Safe

#### A. The Record Shows Plaintiffs Waived Their Safety Claims

The transcript of the December 15, 2009 hearing is devastating to Plaintiffs' current arguments. In their brief, Defendants quoted nine separate portions of the transcript to show that the Court only allowed Plaintiffs' NJCFA claims to survive because of their representations that the complaint "concentrates solely" on ProMeris's alleged lack of efficacy at killing pests. (*See* Defs.' Mem. (ECF No. 180-1) at 8-10, 13.) Plaintiffs' meager response is to quibble over the length of *one* of the nine quotations, arguing that, by omitting the phrase "and misrepresentation allegations" from a footnote, Defendants have somehow obscured a ruling that purportedly preserved Plaintiffs' claims that ProMeris is

unsafe.  (Pls. Opp. at 32.)  Putting aside the fact that the omitted phrase is completely consistent with the Court's ruling that Plaintiffs' only claim is that Defendants misrepresented ProMeris's *efficacy*, Plaintiffs remain unwilling or unable to substantively address any of the other eight excerpts from the hearing transcript.

The transcript speaks for itself.  Plaintiffs cannot avoid the clear consequences of their tactical decision to abandon their safety claims to preserve the treble damages and attorney's fees potentially available under the NJCFA by simply denying that they are playing fast and loose or acting in bad faith.  Their waiver of all safety claims was not only complete and unambiguous but also necessary to block application of the NJPLA.  It cannot be undone by contriving a "composite" "risk/benefit profile" refund claim, whereby the product's alleged safety risks are somehow no longer product liability claims.  (*See* Pls.' Opp. at 1; *see*, *e.g.*, McDarby v. Merck & Co., 949 A.2d 223 (N.J. Super. Ct. App. Div. 2008) (reversing $45 refund award – trebled to $135 plus $2 million attorney's fee – to Plaintiff Cona who prevailed at trial under NJCFA, despite being uninjured by the drug, on allegations that manufacturer had induced his purchase by fraudulently misrepresenting drug's safety).)  Nor can they seek recovery by arguing that ProMeris had such a "stench" that it sickened Ms. Munoz's dog and burned Ms.

Mahtani's eyes. Id. at 22, 24. Allegations of noxious fumes are obvious product liability claims as a matter of New Jersey law.

### B. Plaintiffs' Inapt Public Policy Arguments Do Not Create a Genuine Dispute of Material Fact

Without a legal basis for opposing summary judgment, Plaintiffs resort to an inapt disaster hypothetical. See id. at 27-28 (arguing that accepting Defendants' legal position would allow auto manufacturers to avoid responsibility for duping consumers into buying unsafe cars until the consumers suffered actual physical injury). The argument is fallacious. In New Jersey, any purchasers who believe they were tricked into buying unsafe automobiles can sue before they sustain a physical injury. But they must file suit under the New Jersey Product Liability Act (unless their only claim is for breach of express warranty) and allege property damage. And to prove that the car has an unsafe design, they would also need to designate a proper expert to prepare a report and testify that the car does not meet proper safety standards.

If, however, the plaintiffs renounce their product liability claims and never offer required expert testimony, as Plaintiffs have done here, the defendant would be entitled to summary judgment upon motion after discovery closes. There is nothing inequitable about this. The Court should not accept Plaintiffs' invitation to avoid applying the law here to protect hypothetical future plaintiffs from summary judgment.

4

### C. The "Law of the Case" Doctrine Is Not at Issue in This Motion

Plaintiffs also try to fend off this meritorious summary judgment motion by contesting arguments that Defendants never made. (*See* id. at 28-29 n.17 (arguing incorrectly – and at length – that Defendants' judicial estoppel argument is an implicit argument for applying the "law of the case" doctrine).) Defendants' motion does not rely on the law of the case doctrine. And resolving this motion is not aided by cases that recognize the unremarkable proposition "that a statement in the course of denying a motion to dismiss based solely on the face of the complaint is not binding as law of the case, which doctrine pertains only to issues actually decided." The entire argument is misplaced.

## II.   Plaintiffs Cannot Continue Without an Efficacy Expert

### A. Establishing a Veterinary Pesticide's Efficacy Is a Complex Scientific Question That Requires Expert Testimony as a Matter of Law

Citing many of the same cases that Defendants cite, Plaintiffs reject the premise "that an expert is required to discuss the product's lack of efficacy." (Id. at 35.) This is not a material factual dispute; it is a purely legal question. And, despite Plaintiffs' brisk assurance to the contrary, their core allegation that ProMeris lacks efficacy as a veterinary pesticide is a highly specialized scientific question of biochemistry and parasitology. Plaintiffs only reinforce the complexity of this specialized scientific question with their citation to the journal

Veterinarian Therapeutics, Volume 9, No. 2, and accompanying argument that ProMeris "often fell short particularly as a long-term treatment" because "the active ingredient metaflumizone had a 'slow kill' which some veterinarians understood to mean that it would not break the life-cycle of a flea population." (Pls.' Opp. at 36, n.20.)  Equally unreasonable is Plaintiffs' assurance that jurors can perform a statistical analysis of "ProMeris data" and "field studies" to decide the efficacy question on their own.  This cannot reasonably be characterized as a "commonplace and ordinary" inquiry for a layperson.  As a matter of law, an efficacy expert is required here.

Plaintiffs' cited authorities only weaken their argument.  (*See* id. at 34-35 (citing Bushman v. Halm, 798 F.2d 651, 654 (3d Cir. 1986)).)  Bushman merely holds that a plaintiff who was treated in an emergency room for injuries and a deep laceration to his knees, after a head-on car crash that caused his knees to hit the dashboard of his vehicle, does not need an expert to opine that the collision caused his ongoing knee pain.  798 F.2d at 654.  Unlike the inquiry into the efficacy of ProMeris's chemical agents as a veterinary pesticide, the Bushman inquiry – whether trauma to plaintiff's knees caused his own coinciding knee pain – is reasonably characterized as a "commonplace and ordinary" inquiry for a layperson.  Under controlling authority, cited in Defendants' initial brief, expert

6

testimony is required as a matter of law to prove allegations that ProMeris lacks efficacy as a veterinary pesticide. (Defs.' Mot. at 15-19.)

## B. Dr. Plunkett Cannot Offer Testimony on ProMeris's Efficacy

Plaintiffs also overreach when arguing that "Dr. Plunkett's opinion succinctly describes" the efficacy of ProMeris. (Pls.' Opp. at 34.) Plaintiffs quote paragraph 38 of the report that Dr. Plunkett signed, which states "[c]onsidered together, the ProMeris data demonstrate that ProMeris for dogs had similar efficacy to some products, less efficacy than other products, but also had a greater propensity to produce toxicity." Id. Putting aside the fact that Plaintiffs never cite anything in the record where Defendants represented to purchasers that ProMeris was just as effective as competing products, the argument says nothing about Dr. Plunkett's complete abandonment of all efficacy opinions at her subsequent deposition.

Specifically, Dr. Plunkett emphatically and repeatedly testified that she was not offering opinions on efficacy, had never been asked to do so, and lacked any expertise in veterinary medicine, parasitology, or entomology. (*See* Defs.' Mot. at 6-8.) Dr. Plunkett testified at her second deposition that she is "not providing specific opinions on efficacy" and explicitly affirmed that she is not opining that ProMeris (1) "is less effective than any other product on the market," (2) has a "kill speed [that] is slower than competing products," or (3) "break[s] the life

7

cycle of fleas or particulars." (Id. (citing 11/30/10 Deposition of Laura Plunkett, Ph.D. ("Plunkett depo. Vol. II"). 276:21-277:6, 319:23-320:4).) Given this testimony, Defendants had no basis to even ask her questions about efficacy. Plaintiffs have no grounds to argue that Dr. Plunkett can now offer any opinions on ProMeris's efficacy.

### III. Plaintiffs Cannot Show an Ascertainable Loss or Any Other Recoverable Damages

#### A. Not All Named Plaintiffs Are Even ProMeris Purchasers

Plaintiffs' most egregious error is their continued characterization of the named plaintiffs as individuals who all "suffered an ascertainable loss because they bought a product that was not what Defendant represented it to be." (Pls.' Opp. at 41 (emphasis added); id. at 4 (representing that "Plaintiffs . . . were induced to purchase ProMeris"); id. (arguing "Plaintiffs would not have purchased ProMeris"); id. at 5 (arguing "Plaintiffs assert claims as consumers who bought the product").) But, what Plaintiffs resist disclosing – until the last page of their legal argument – is that there is no dispute that Plaintiff Mahtani did not purchase or pay anything for ProMeris. (Id. at 42.) It was given to her for free.

Plaintiffs then argue that they all still have ascertainable losses because they ultimately purchased "a whole package of Frontline" after they became dissatisfied with ProMeris. Plaintiffs creatively mischaracterize this as a "replacement treatment" or "loss" caused by Defendants. But, under Plaintiffs' own theory of

8

the case, they were regular Frontline purchasers who were lured away from Frontline to try ProMeris.  Plaintiffs, as regular Frontline purchasers, would have made the exact same Frontline purchases, which they now label replacement losses, if none of the alleged misrepresentations had ever occurred – only they would have done so sooner.  Plaintiffs cite no authority for their radical legal contention that Defendants can be liable here for "causing" them to purchase Frontline, a competitor's product that they regularly purchased.  This is not a factual dispute.

### B. Plaintiffs Cannot Show Any Benefit-of-the-Bargain Losses

Plaintiffs' argument that they can show an "ascertainable" loss here by subtracting the value of what they received from Defendants from the value of what was allegedly offered is unsupported even by the cases they cite.  (*See* id. at 41 citing, *inter alia*, Smajlaj v. Campbell Soup Co., CIV. 10-1332 JBS/AMD, 2011 WL 1086764, at *11 n.12 (D.N.J. Mar. 23, 2011).)  On a Rule 12(b)(6) motion to dismiss, Smajlaj found that ascertainable loss was adequately plead in a complaint alleging that defendant sold regular tomato soup at a premium price by misrepresenting it as low in sodium.  (Id. at *1.)  The complaint had explicitly alleged that the difference was approximately 20 to 80 cents per can.  (Id. at *12.)  And because the prices of cans of defendant's regular and premium tomato soups

were each reasonably ascertainable, the pleadings of "ascertainable loss" were adequate under liberal pleading standards.  (Id. at \*12-13.)

But, unlike the Smajlaj plaintiffs, Plaintiffs here have no reasonable basis for asserting that they can prove an "ascertainable loss" on this record.  Smajlaj contrasts its facts with cases that "involve plaintiffs that made no attempt whatsoever to quantify the difference between the value of the product received and the one promised."  (Id. at \*11, n.12.)  Many of the string-cited cases in Smajlaj's footnote 12 show why Plaintiffs here have no ascertainable loss:

> *Shelton v. Restaurant.com Inc.,* Civil Action No. 10-0824(JAP), 2010 WL 2384923, at \*4 (D.N.J. June 15, 2010) ('the pleadings are devoid of any facts which quantify or measure what loss was suffered'); *In re Ford Motor Co. E-350 Van Products Liability Litigation (No. II),* Civil Action No. 03-4558(GEB), 2010 WL 2813788, at \*28 (D.N.J. July 9, 2010) ('The allegations set forth by the New Jersey Plaintiffs are replete with generalized statements concerning loss; however, the evidence submitted by the New Jersey Plaintiffs contains no specific proofs such that the losses could be quantified or measured.'); *Shannon v. Howmedica Osteonics Corp.,* Civil Action No. 09-4171(JLL), 2010 WL 421096, at \*3 (D.N.J. Feb. 1, 2010) (citing *Parker v. Howmedica Osteonics Corp.,* Civil Action No. 07-02400(JLL), 2008 WL 141628, at (D.N.J. Jan. 14, 2008) (holding that allegation of purchase price, without other comparison information, is not enough)").)

Id.; *see also* In re Ford E-350 Van, 2010 WL 2813788, at \*28 (recognizing that, "even though a product may be defective, a subjective assertion of a diminution in value or loss of a benefit-of-the-bargain will be insufficient to support a quantifiable loss; rather, the plaintiff must produce specific proofs")  amended,

10

2011 WL 601279, at *8-9 (D.N.J. Feb. 16, 2011) (granting summary judgment on New Jersey unjust enrichment claims against remote manufacturer because "courts in New Jersey have consistently required the showing of a direct benefit to establish a claim for unjust enrichment").

Here, despite completing discovery and facing summary judgment, Plaintiffs are still unable to produce "facts which quantify or measure what loss was suffered." They have no "specific proofs" for doing so. And they have proffered little more than Ms. Munoz's purchase price "without other comparison information." Even Ms. Munoz's eleventh-hour claim for "lost use" of $87 or hypothetical finance charges on her credit card lacks any evidentiary basis in the record or supporting case law. Thus, even under Plaintiffs' most favorable hand-picked cases, this still "is not enough" to survive even a Rule 12(b)(6) motion to dismiss. It certainly cannot get Plaintiffs past summary judgment under Rule 56.

### C. NJCFA Standing Is Not at Issue in This Motion

Finally, Plaintiffs also mischaracterize Defendants' argument as contending that Plaintiffs "have no standing under the New Jersey Consumer Fraud Act." Id. at 7. That is not the argument. Plaintiffs have no ascertainable loss – regardless of whether they meet the low threshold of standing – and Defendants are entitled to summary judgment on all claims for that reason, among others presented in the briefing.

## CONCLUSION

Plaintiffs concede that they cannot bring product liability claims here and they have no expert on ProMeris's alleged lack of efficacy. Thus, they are clearly barred from bringing claims that ProMeris is (1) not safe or (2) not effective. Unfazed by this, they now argue that they can maintain a "composite" action that ProMeris is not "safe and effective" as represented in its purported "risk/benefit profile." This is legal sophistry unsupported by case law or any other authority.

After abandoning their safety claims to thwart application of the NJPLA in 2009, Plaintiffs' only remaining allegation – as the Court repeatedly stated on the record – was that ProMeris lacked efficacy. But, with discovery now closed, Plaintiffs have failed to designate an expert to testify that ProMeris lacks efficacy, despite the requirement to do so under New Jersey law. On top of this, the named Plaintiffs do not even have recoverable damages. Their case is over.

But Plaintiffs still try to barrel past summary judgment by repeatedly vilifying Defendants as liars who hurt puppies. Dozens – even hundreds – of pages of irrelevant factual assertions will not defeat a meritorious summary judgment motion. And nothing that Plaintiffs offer as purportedly disputed facts adequately rebuts *any* of the three arguments Defendants advanced in their motion.

For these reasons, Defendants respectfully ask the Court to grant their motion for summary judgment on all counts.

April 11, 2011                                             Respectfully submitted,


                                    /s/  *Gita Rothschild*                                    
                                    Gita Rothschild
                                    **McCARTER & ENGLISH, LLP**
                                    Four Gateway Center
                                    100 Mulberry Street
                                    Newark, New Jersey 07102
                                    (973) 622-4444
                                    (973) 624-7070 (fax)


                                    Linda S. Woolf
                                    K. Nichole Nesbitt
                                    Derek M. Stikeleather
                                    GOODELL, DeVRIES, LEECH & DANN, LLP
                                    One South Street, 20th Floor
                                    Baltimore, MD  21202
                                    (410) 783-4000
                                    (410) 783-4040 (fax)

                                    **COUNSEL FOR DEFENDANTS**

13